[Cite as *State v. Hacker*, 2020-Ohio-5048.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,                        CASE NO.  8-20-01

     v.

CHRISTOPHER P. HACKER,                O P I N I O N

     DEFENDANT-APPELLANT.

Appeal from Logan County Common Pleas Court
Trial Court No. CR 19 06 0192

Judgment Affirmed

Date of Decision:   October 26, 2020

APPEARANCES:

    *Marc S. Triplett* for Appellant

    *Eric C. Steward* for Appellee

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Christopher P. Hacker ("Hacker"), appeals the January 28, 2020 judgment entry of sentence of the Logan County Court of Common Pleas. We affirm.

{¶2} This case stems from Hacker's trespass into the victim's home (while the victim and Hacker's wife were present), and Hacker's threats toward the victim while brandishing a deadly weapon. (Doc. No. 18).

{¶3} On June 11, 2019, the Logan County Grand Jury indicted Hacker on the following criminal charges: Count One of aggravated burglary in violation of R.C. 2911.11(A), (B), a first-degree felony with a three-year firearm specification under R.C. 2941.145(A); Count Two also for aggravated burglary in violation of R.C. 2911.11(A)(2), (B), a first-degree felony with a three-year firearm specification under R.C. 2941.145(A); and Count Three of aggravated menacing in violation of R.C. 2903.21(A), (B), a first-degree misdemeanor. (Doc. No. 1).

{¶4} Hacker appeared for arraignment on June 14, 2019 and entered pleas of not guilty. (Doc. No. 13). However, on December 20, 2019, Hacker withdrew his pleas of not guilty and entered guilty pleas under a negotiated plea agreement. (Doc. No. 54). In exchange for his guilty pleas to Count One and the firearm specification (amended from a three-year to a one-year specification under R.C. 2941.141(A)), the State agreed to dismiss Counts Two and Three. (*Id.*); (Dec. 20, 2019 Tr. at 3-5,

20-22). The trial court conducted a Crim.R. 11 colloquy, accepted Hacker's guilty plea, and ordered a presentence investigation report ("PSI") be prepared. (*Id.*); (*Id.* at 6-22). Important to appellant's appeal, prior to his sentencing hearing, Hacker filed an objection to the imposition of indefinite-sentencing provisions under the Reagan Tokes Law, Am.Sub.S.B. 201, 2018 Ohio Laws 157 ("S.B. 201"). (Doc. No. 51).

{¶5} On January 27, 2020, the trial court sentenced Hacker to serve an indefinite prison term with a minimum prison term of six years and a maximum prison term of nine years under Count One and a mandatory definite prison term of one year under the firearm specification.[1] (Doc. No. 60). The indefinite prison term under Count One was ordered to be served consecutively to the mandatory definite prison term under the firearm specification.[2] (*Id.*). Then, the trial court imposed a $10,000 fine and ordered Hacker to pay court costs, the costs of prosecution, and fees under R.C. 2929.18. (*Id.*).

{¶6} On February 7, 2020, Hacker filed a notice of appeal. (Doc. No. 77). He raises three assignments of error for our review, which we will address together.

---

[1] Hacker's gun specification could not be used to increase the maximum prison term as to Count One. *See* R.C. 2929.144(B)(4). R.C. 2929.144 is silent as to the impact of his gun specification on the minimum prison term as to Count One. The trial court in this instance was required to impose the gun specification (a mandatory definite prison term) separately, and to order it to be served prior to and consecutive to the stated minimum term as to Count One. *See* R.C. 2929.14(C)(1)(a).
[2] Hacker was given 11 days' jail-time credit. (Doc. No. 60).

## Assignment of Error I

**The Trial Court Erred When It Did Not Sustain Mr. Hacker's Objections to the Sentencing Provisions Contained in R.C. 2967.271 [sic] (1.27.20. Tr. 25).**

## Assignment of Error II

**As Amended By The Reagan Tokes Act, The Revised Code's Sentences For First and Second Degree Qualifying Felonies Violate The United States And Ohio Constitutions. (1.27.20. Tr. 25).**

## Assignment of Error III

**The Trial Court Erred When It Imposed a Fine of Ten Thousand Dollars (1.27.20, [sic] Tr. 27).**

{¶7} In his first and second assignment of error, Hacker asserts that the trial court erred in sentencing him under the Reagan Tokes Law because it violates his rights to a trial by jury and due process of law, and the constitutional requirement of separation of powers rendering his sentence contrary to law. In his third assignment of error, Hacker argues that the trial court erred when it failed to consider Hacker's ability to pay the financial sanction imposed under R.C. 2929.19(B)(5), which is also contrary to law.[3]

*Standard of Review*

{¶8} Under R.C. 2953.08(G)(2), an appellate court will reverse a sentence "only if it determines by clear and convincing evidence that the record does not

---

[3] While Hacker references R.C. 2929.18(B)(5) throughout his brief, it is apparent the ultimate question he is seeking to answer directs us to R.C. 2929.19(B)(5).

support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id.* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

*Reagan Tokes Law*

{¶9} The Reagan Tokes Law, enacted in 2018 and effective on March 22, 2019, "'significantly altered the sentencing structure for many of Ohio's most serious felonies' by implementing an indefinite sentencing system for those non-life felonies of the first and second degree, committed on or after the effective date." *State v. Polley*, 6th Dist. Ottawa No. OT-19-039, 2020-Ohio-3213, ¶ 5, fn. 1, quoting The Ohio Criminal Sentencing Commission, *SB 201-The Reagan Tokes Law Indefinite Sentencing Quick Reference Guide*, July 2019 and citing R.C. 2929.144(A). Under the Reagan Tokes "[L]aw, qualifying first- and second-degree felonies committed on or after March 22, 2019 are now subject to the imposition of indefinite sentences." *State v. Barnes*, 2d Dist. Montgomery No. 28613, 2020-Ohio-4150, ¶ 28. These indefinite prison terms will consist of a stated minimum prison term selected by the trial court from a range of prison terms set forth in R.C. 2929.14(A) and a maximum prison term for qualifying first- and second-degree

felonies as determined by the trial court from formulas set forth in R.C. 2929.144.

*Id.*

{¶10} Moreover, the Reagan Tokes Law establishes a presumptive-release date at the end of the offender's minimum prison term imposed. R.C. 2967.271(B). Nevertheless, the Ohio Department of Rehabilitation and Correction ("ODRC") may rebut that presumption and keep the offender in prison for an additional period not to exceed the maximum prison term imposed by the trial court. R.C. 2967.271(C). In order to rebut the presumption, ODRC must conduct a hearing and determine whether one or more of the following factors are applicable:

> (1) Regardless of the security level in which the offender is classified at the time of the hearing, both of the following apply:
>
> (a) During the offender's incarceration, the offender committed institutional rule infractions that involved compromising the security of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional institution or its inmates, or committed a violation of law that was not prosecuted, and the infractions or violations demonstrate that the offender has not been rehabilitated.
>
> (b) The offender's behavior while incarcerated, including, but not limited to the infractions and violations specified in division (C)(1)(a) of this section, demonstrate that the offender continues to pose a threat to society.
>
> (2) Regardless of the security level in which the offender is classified at the time of the hearing, the offender has been placed by the department in extended restrictive housing at any time within the year preceding the date of the hearing.

Case No. 8-20-01

(3) At the time of the hearing, the offender is classified by the department as a security level three, four, or five, or at a higher security level.

R.C. 2967.271(C)(1), (2), and (3).

*Constitutionality Analysis*

{¶11} Hacker argues that the presumptive-release provisions of R.C. 2967.271 violates his right to a trial by jury and due process of law, and further violates the constitutional requirement of separation of powers. Put more plainly— Hacker argues R.C. 2967.271 is unconstitutional on its face.

{¶12} We review the determination of a statute's constitutionality de novo. *State v. Hudson*, 3d Dist. Marion, 2013-Ohio-647, ¶ 27, citing *Akron v. Callaway*, 9th Dist. Summit No. 22018, 2005-Ohio-4095, ¶ 23 and *Andreyko v. Cincinnati*, 1st Dist. Hamilton No. C-020606, 2003-Ohio-2759, ¶ 11. "De novo review is independent, without deference to the lower court's decision." *Id.*, citing *Ohio Bell Tel. Co. v. Pub. Util. Comm. of Ohio*, 64 Ohio St.3d 145, 147 (1992).

{¶13} "'It is difficult to prove that a statute is unconstitutional.'" *State v. Stoffer*, 2d Dist. Montgomery No. 26268, 2015-Ohio-352, ¶ 8, quoting *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, ¶ 25. "'All statutes have a strong presumption of constitutionality. * * * Before a court may declare unconstitutional an enactment of the legislative branch, "it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly

incompatible."'"" *Id.*, quoting *Arbino* at ¶ 25, quoting *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142 (1955), paragraph one of the syllabus. "[I]f at all possible, statutes must be construed in conformity with the Ohio and United States Constitutions." *State v. Collier*, 62 Ohio St.3d 267, 269 (1991), citing *State v. Tanner*, 15 Ohio St.3d 1 (1984) and R.C. 1.47.

{¶14} "A statute may be challenged as unconstitutional on the basis that it is invalid on its face or as applied to a particular set of facts." *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, ¶ 17. The distinction between the two types of constitutional challenges is important because the standard of proof is different for the two types of challenges. *Wymsylo v. Bartec, Inc.*, 132 Ohio St.3d 167, 2012-Ohio-2187, ¶ 20. "To prevail on a facial constitutional challenge, the challenger must prove the constitutional defect, using the highest standard of proof, which is also used in criminal cases, proof beyond a reasonable doubt." *State ex rel. Ohio Congress of Parents & Teachers v. State Bd. of Edn.*, 111 Ohio St.3d 568, 2006-Ohio-5512, ¶ 21, citing *State ex rel. Dickman* at paragraph one of the syllabus. Conversely, "[t]o prevail on a constitutional challenge to the statute as applied, the challenger must present clear and convincing evidence of the statute's constitutional defect." *Id.*, citing *Belden v. Union Cent. Life Ins. Co.*, 143 Ohio St. 329 (1944), paragraph six of the syllabus.

{¶15} "A facial challenge alleges that a statute, ordinance, or administrative rule, on its face and under all circumstances, has no rational relationship to a legitimate governmental purpose." *Wymsylo* at ¶ 21, citing *Jaylin Invest., Inc. v. Moreland*, 107 Ohio St.3d 339, 2006-Ohio-4, ¶ 11. "Facial challenges to the constitutionality of a statute are the most difficult to mount successfully, since the challenger must establish that no set of circumstances exists under which the act would be valid." *Id.*, citing *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095 (1987). "If a statute is unconstitutional on its face, the statute may not be enforced under any circumstances." *Id.* "When determining whether a law is facially invalid, a court must be careful not to exceed the statute's actual language and speculate about hypothetical or imaginary cases." *Id.*, citing *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450, 128 S.Ct. 1184 (2008).

{¶16} "In an as-applied challenge, the challenger 'contends that application of the statute in the particular context in which he has acted, or in which he proposes to act, [is] unconstitutional.'" *Lowe* at ¶ 17, quoting *Ada v. Guam Soc. of Obstetricians & Gynecologists*, 506 U.S. 1011, 113 S.Ct. 633 (1992) (Scalia, J., dissenting). The practical impact of holding that a statute is unconstitutional as applied to the challenger is to prevent its future application in a similar context, "'but not to render it utterly inoperative.'" *Yajnik v. Akron Dept. of Health, Hous.*

*Div.*, 101 Ohio St.3d 106, 2004-Ohio-357, ¶ 14, quoting *Ada*, 506 U.S. at 1011, 113 S.Ct. at 633 (Scalia, J. dissenting). "[W]here statutes are challenged on the ground that they are unconstitutional as applied to a particular set of facts, the party making the challenge bears the burden of presenting clear and convincing evidence of a presently existing set of facts that make the statutes unconstitutional and void when applied to those facts." *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, ¶ 38 (2005), citing *Beldon*, 143 Ohio St. 329, at paragraph six of the syllabus.

{¶17} We begin by addressing Hacker's argument that the presumptive-release provisions of R.C. 2967.271 violates his right to a trial by jury in that it permits ODRC (and not the jury) to engage in fact-finding increasing the offender's minimum prison term, a right protected by the Sixth Amendment of the United States Constitution applicable to the states through the due process clause of the Fourteenth Amendment of the United States Constitution and also guaranteed by Article I, Section 5 of the Constitution of the State of Ohio. "The question of constitutionality of a statute must generally be raised at the first opportunity and, in a criminal prosecution this means in the trial court." *State v. Awan*, 22 Ohio St.3d 120, 122 (1986), limited by, *In re M.D.*, 38 Ohio St.3d 149 (1988), syllabus, citing *State v. Woodards*, 6 Ohio St.2d 14 (1966). If a party fails to object to a constitutional issue at trial, an appellate court need not consider the objection for the first time on appeal. *Id.*, paragraph one of the syllabus. Importantly, a review

of the record reveals Hacker did not raise this argument before the trial court and now raises this argument for the first time on appeal. We conclude that Hacker has waived this argument, and therefore we decline to address it.[4] *See State v. Pritt*, 3d Dist. Seneca No. 13-14-39, 2015-Ohio-2209, ¶ 15, citing *State v. Bagley*, 3d Dist. Allen No. 1-13-31, 2014-Ohio-1787, ¶ 71, citing *State v. Rowland*, 3d Dist. Hancock No. 5-01-28, 2002-Ohio-1417, 2002 WL 479163, *1 (Mar. 29, 2002). *See also Barnes*, 2020-Ohio-4150, at ¶ 37.

{¶18} Next we turn to Hacker's assertions that the Reagan Tokes Law violates due process and the doctrine of separation of powers. First, Hacker argues that the Reagan Tokes Law does not provide him adequate notice of the conduct that triggers ODRC to maintain the offender's incarceration after the expiration of the offender's minimum prison term and it does not provide a structure as to the hearing to rebut the presumption established under division (B). Secondly, and as it relates to the separation-of-powers doctrine, Hacker argues that Reagan Tokes Law is unconstitutional because it permits ODRC (rather than the trial court) to make factual determinations as to whether the offender is eligible for a reduction of the offender's minimum prison term (his presumptive-release date) or to maintain

---

[4] "Waiver is the intentional relinquishment or abandonment of a right, and waiver of a right 'cannot form the basis of any claimed error under Crim.R. 52(B).'" *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 23 quoting *State v. McKee*, 91 Ohio St.3d 292, 299, fn. 3, (Cook, J. dissenting) and citing *United States v Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 1777 (1993). Forfeiture, on the other hand, "is a failure to preserve an objection * * *." *Id.*, citing *Olano* at 733. Forfeiture does not extinguish an appellant's claim "of plain error under Crim.R. 52(B)." *Id.*, citing *McKee* at 299, fn. 3.

the offender's incarceration after the expiration of the offender's minimum prison term for a period not exceeding the offender's maximum prison term. His arguments are based on the holdings in *State ex rel. Bray v. Russell*, 89 Ohio St.3d 132 (2000) and *State v. Oneal*, Hamilton C.P. No. 1903 562 (Nov. 20, 2019).

{¶19} In *Bray*, the Supreme Court of Ohio addressed the constitutionality of R.C. 2967.11 (which has since been repealed). *Bray*, 89 Ohio St.3d at 132; R.C. 2967.11, repealed in A.m.Sub.H.B. No. 130, 2008 Ohio Laws 173. R.C. 2967.11, stated in pertinent part, that:

> [a]s part of a prisoner's sentence, the parole board may punish a violation committed by the prisoner by extending the prisoner's stated prison term for a period of fifteen, thirty, sixty, or ninety days in accordance with this section. If a prisoner's stated term is extended under this section, the time by which it is so extended shall be referred to as 'bad time.'

R.C. 2967.11(B), repealed in A.m.Sub.H.B. No. 130, 2008 Ohio Laws 173. A "violation" was defined as "an act that is a criminal offense under the law of this state or the United States, whether or not a person is prosecuted for the commission of the offense." R.C. 2967.11(A), repealed in A.m.Sub.H.B. No. 130, 2008 Ohio Laws 173. Other sections in R.C. 2967.11 articulated the procedures that were followed to determine whether a "violation" (a crime) had been committed. *Bray* at 135.

{¶20} The Court in *Bray* held, "[i]n short, R.C. 2967.11(C), (D), and (E) enable[d] the executive branch to prosecute an inmate for a crime, to determine

-12-

whether a crime has been committed, and to impose a sentence for that crime." *Id.* The Court in *Bray* further held that the statute improperly permitted the executive branch to act "as judge, prosecutor, and jury * * * [and thereby] intrude[] well beyond the defined role of the executive branch as set forth in our Constitution." *Id.* Consequently, the Court in *Bray* concluded the statute unconstitutional because it violated the doctrine of separation of powers. *Id.* at 136.

{¶21} The trial court in *Oneal* (relying on *Bray*) concluded the Reagan Tokes Law is unconstitutional because it surrenders judicial powers to the executive branch. The trial court noted, "[t]he conditions that the [O]DRC may consider in determining whether an offender should not be released upon the end of [his] minimum prison term may include a 'violation of law'" which, like the bad time statute "is synonymous with a criminal offense." *Oneal*, Hamilton C.P. No. 1903 562, at *5. Moreover, *Oneal* determined that Reagan Tokes Law violates procedural-due process because it does not provide for a judicial hearing prior to the extension of a prison term beyond the minimum term. *Id.* at *6.

{¶22} Here, Hacker's reliance on *Bray* and *Oneal* is flawed because there is a significant distinction between the imposition of "bad time" (as was permitted under R.C. 2967.11) and the structure for extension of a prison term beyond the minimum term under the Reagan Tokes Law. Unlike *Bray*, the Reagan Tokes Law does *not* permit ODRC (the executive branch) to maintain Hacker beyond the

maximum prison term imposed by the trial court. Therefore, we cannot conclude that *Bray* and *Oneal* lead us to the conclusion that the Reagan Tokes Law violates the doctrine of separation of powers. *Barnes*, 2020-Ohio-4150, ¶ 36, (concluding "that *Bray* and *Oneal* do not compel the conclusion that the Reagan Tokes Law violates the separation of powers doctrine.")

{¶23} Accordingly, we cannot conclude that Hacker has met his burden in demonstrating that the Reagan Tokes Law is unconstitutional on its face with proof beyond a reasonable doubt and thus, we cannot conclude that Hacker's sentence is clearly and convincingly contrary to law.

{¶24} Hacker's first and second assignment of error are overruled.

*Financial-Sanction (Fine) Analysis*

{¶25} Now, we turn to Hacker's argument that the trial court failed to consider his ability to pay the financial sanction imposed. We review the imposition of a financial sanction under the same standard of review as we would apply toward any other felony sentence. *See State v. McCants*, 1st Dist. Hamilton No. C-190143, 2020-Ohio-3441, ¶ 10, citing *State v. Owen*, 1st Dist. Hamilton No. C-170413, 2018-Ohio-1853, ¶ 5. An appellate court "may modify or vacate a felony sentence only if we clearly and convincingly find that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to

law." *Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, at ¶ 1, citing R.C. 2953.08(G)(2).

**{¶26}** As an initial matter, Hacker never objected to the imposition of a financial sanction (i.e., a fine) by the trial court at his sentencing hearing, which he now raises for the first time on appeal. (Jan. 27, 2020 Tr. at 27-29); (Doc. No. 85). An appellant's failure to raise an issue with the trial court constitutes a forfeiture of that issue absent plain error. *State v. Kiser*, 3d Dist. Seneca No. 13-16-25, 2017-Ohio-4222, ¶ 21 (applying the plain-error standard to a case involving a fine where no discussion or objection to the imposition of the financial sanction was lodged).

**{¶27}** Crim.R. 52(B) governs plain error in criminal cases. The Supreme Court of Ohio has held that "'the plain error rule is to be invoked only in exceptional circumstances to avoid a miscarriage of justice.'" *State v. Long*, 53 Ohio St.2d 91, 95 (1978), quoting *United States. v. Rudinsky*, 439 F.2d 1074, 1076 (6th Cir.1971), citing *Eaton v. United States*, 398 F.2d 485, 486 (5th Cir.1968). Because Hacker did not object to the imposition of this financial sanction, we apply the plain-error rule to the facts before us.

**{¶28}** Our review is not without limitation. The Supreme Court of Ohio has previously concluded that there are limitations on an appellate court's decision to review and correct an error under Crim.R. 52(B). *State v. Barnes*, 94 Ohio St.3d

21, 27 (2002). "First, there must be an error, i.e., a deviation from a legal rule." *Id.* citing *State v. Hill*, 92 Ohio St.3d 191, 200 (2001), citing *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 1776 (1993). "Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings." *Id.*, citing *State v. Sanders*, 92 Ohio St.3d 245, 257, (2001), citing *State v. Keith*, 79 Ohio St.3d 514, 518 (1997) and *Olano*, 507 U.S. at 734, 113 S.Ct. at 1777. "Third, the error must have affected 'substantial rights.' We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." *Id.*, citing *Hill*, 92 Ohio St.3d at 205, *State v. Moreland*, 50 Ohio St.3d 58, 62 (1990), and *Long*, 53 Ohio St.2d at 91, paragraph two of the syllabus. Thus, Hacker is "required to demonstrate a reasonable probability that the error resulted in prejudice—the same deferential standard for reviewing ineffective assistance of counsel claims." *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 22, citing *United States v. Dominguez Benitez*, 542 U.S. 74, 81-83, 124 S.Ct. 2333 (2004). That is—an appellate court addressing the failure to object to the imposition of a financial sanction "must review the facts and circumstances of each case objectively and determine whether the defendant demonstrated a reasonable probability that had [Hacker's trial] counsel moved to waive [or objected to the imposition of the financial sanction], the trial court would have granted that motion." *See State v. Davis*, 159 Ohio St.3d 31, 2020-Ohio-309,

¶ 14 (applying the prejudiced prong on ineffective-assistance-of-counsel analysis to the waiver of court costs); *see also State v. Thompson*, 3d Dist. Allen No. 1-19-30, 2020-Ohio-723, ¶ 19, citing *Davis* at ¶ 14.

{¶29} R.C. 2929.19(B)(5) requires the trial court "[b]efore imposing a financial sanction under section 2929.18 * * * [to] consider the offender's present and future ability to pay the amount of the sanction * * *." "[T]here are no express factors that must be taken into consideration or findings regarding the offender's ability to pay that must be made on the record." *State v. Williams*, 9th Dist. Summit No. 26014, 2012-Ohio-5873, ¶ 17, quoting *State v. Martin*, 140 Ohio App.3d 326, 327 (4th Dist.2000). However, the record must reflect that the trial court actually considered a defendant's ability to pay. *Williams* at ¶ 17, citing *Martin* at 327; *State v. Lewis*, 2d Dist. Greene No. S-11-028, 2012-Ohio-4858, ¶ 9; *State v. McQuillen*, 5th. Dist. Ashland No. 12CA014, 2012-Ohio-4953, ¶ 11; and *State v. Dahms*, 6th Dist. Sandusky No. S-11-025, 2012-Ohio-3181, ¶ 16. We "look to the totality of the circumstances to see if this requirement has been satisfied." *State v. Barker*, 8th Dist. Cuyahoga No. 93574, 2010-Ohio-4480, ¶ 12, citing *State v. Lewis*, 8th Dist. Cuyahoga No. 90413, 2008-Ohio-4101, ¶ 12, citing *State v. Henderson*, 4th Dist. Vinton No. 07CA659, 2008-Ohio-2063, ¶ 7; *State v. Smith*, 4th Dist. Ross No. 06CA2893, 2007-Ohio-1884, ¶ 41-42; and *State v. Ray*, 4th Dist. Scioto No. 04CA2965, 2006-Ohio-853, ¶ 26.

**{¶30}** Here, the record reveals that trial court considered Hacker's ability to pay, when the trial court stated that it had "also considered defendant's written sentencing memorandum that was filed January 4, 2020." (Jan. 27, 2020 Tr. at 21); (Doc. No. 85). Importantly, contained within that sentencing memorandum is information regarding Hacker's long-term-employment history where he was considered a "valued employee" with income in the amount of $4,400 per month.[5] (*See* Doc. No. 56). Thereafter, the trial court stated "[i]n addition to this prison sentence, the defendant is also assessed a $10,000 fine." (Jan. 27, 2020 Tr. at 27); (Doc. No. 85). Thus, because the record before us is not silent as to whether the trial court considered Hacker's ability to pay the fine before imposing the financial sanction, the trial court could not commit plain error. *See Williams* at ¶ 19, quoting *State v. Andrews*, 1st Dist. Hamilton No. C110735, 2012-Ohio-4664, ¶ 32. While it certainly facilitates appellate review when a trial court affirmatively states on the record that it considered a criminal defendant's ability to pay, we cannot say that the record in this case does not meet the threshold of R.C. 2929.19(B)(5), as a matter of law. *See Barker* at ¶ 14, (concluding that a cursory reference in the record to the trial court's consideration of all factors required by law, the ordering of a PSI, and the plain-error analysis were sufficient to meet the threshold of R.C.

---

[5] It is not clear from our review of the record whether this was Hacker's gross or net income. (*See* Doc. No. 56).

2929.19(B)(6)).[6]    Consequently, and after reviewing the totality of the circumstances, we cannot conclude that the trial court deviated from some legal rule, with an obvious defect in the proceeding, that affected Hacker's substantial rights. Accordingly, we find no plain error exists which has caused a manifest miscarriage of justice.  *See Long*, 53 Ohio St.2d at 95.

{¶31} For these reasons, Hacker's third assignment of error is overruled.

{¶32} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**

---

[6] R.C. 2929.19 was amended by Am.Sub.H.B. 86, 2011 Ohio Laws File 29, effective September 30, 2011, renumbering the division addressing the trial court's consideration of the offender's ability to pay financial sanctions under R.C. 2929.18 or a fine under R.C. 2929.32 from division (B)(6) to division (B)(5).