[Cite as *State v. Murray*, 2023-Ohio-1628.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NOS. 2022-T-0075<br>2022-T-0076 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeals from the<br>Court of Common Pleas |
| DANIEL A. MURRAY, | |
| Defendant-Appellant. | Trial Court Nos. 2021 CR 00323<br>2021 CR 01019 |

# O P I N I O N

Decided: May 15, 2023
Judgment: Affirmed

*Dennis Watkins*, Trumbull County Prosecutor, and *Ryan J. Sanders*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Michael A. Partlow*, P.O. Box 1562, Stow, OH 44224 (For Defendant-Appellant).

EUGENE A. LUCCI, J.

{¶1} Appellant, Daniel A. Murray, appeals his sentences following his guilty pleas to a total of four felony charges in two cases. We affirm.

{¶2} This appeal involves two cases pertaining to two separate incidents. First, in April 2021, officers arrived at Murray's residence to arrest him pursuant to a warrant. Murray attempted to flee the residence on foot. While running, Murray reached into his coat and retrieved a black bag containing methamphetamine, which he discarded during the chase. When the officers ultimately overtook Murray, an altercation ensued, and

Murray spit on an officer. The second incident occurred in June 2021, when Murray was again arrested. Upon arrest, officers located a bag of methamphetamine in Murray's coat pocket.

{¶3} Murray was indicted in Case No. 2021 CR 00323 on the following counts relating to the April 2021 incident: (1) tampering with evidence, in violation of R.C. 2921.12(A)(1) and (B), a third-degree felony; (2) assault on a peace officer, in violation of R.C. 2903.12(A) and (C)(5), a fourth-degree felony; (3) aggravated possession of drugs, in violation of R.C. 2925.11(A) and (C)(1)(b), a third-degree felony; and (4) possession of a fentanyl-related compound, in violation of R.C. 2925.11(A) and (C)(11)(a), a fifth-degree felony. Murray was later indicted in Case No. 2021 CR 01019 on one count of aggravated possession of drugs, in violation of R.C. 2925.11(A) and (C)(1)(c), a second-degree felony, as a result of the June 2021 incident. Murray initially pleaded not guilty to all charges in both cases, and the trial court joined the cases for trial on motion of the state.

{¶4} Thereafter, pursuant to plea agreements, Murray pleaded guilty to the first through third counts charged in Case No. 2021 CR 00323 and to the sole charge in Case No. 2021 CR 01019. The state agreed to dismiss the remaining count in Case No. 2021 CR 00323, and the parties agreed to jointly recommend the following sentences in each case: in Case No. 2021 CR 00323, consecutive prison terms of 36 months on each of the tampering with evidence and aggravated possession of drugs charges and six months on the assault on a peace officer charge, for an aggregate prison sentence of 78 months; and, in Case No. 2022 CR 01019, an indefinite prison term of six to nine years, to run concurrent to the prison term ordered in Case No. 2021 CR 00323. Murray further agreed to waive the presentence investigation. After accepting Murray's pleas, the trial court

2

proceeded immediately to sentencing, imposing the jointly-recommended sentences stated above.

{¶5}   Murray noticed an appeal from the sentencing entries issued in both cases, and this court consolidated the appeals for all purposes.

{¶6}   In his first assigned error, Murray argues:

The court erred by accepting appellant's guilty plea since his plea was not knowingly, intelligently and voluntarily entered.

{¶7}   "'When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily.   Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution.'" *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 7, quoting *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996).  "The United States Supreme Court has held that a knowing and voluntary waiver of the right to jury trial, the right against compulsory self-incrimination, and the right to confront one's accusers cannot be inferred from a silent record."  *Veney* at ¶ 7, citing *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).  "Crim.R. 11 was adopted in 1973, giving detailed instruction to trial courts on the procedure to follow when accepting pleas."  *Veney* at ¶ 7.

{¶8}   Here, when accepting Murray's pleas, the trial court engaged in a plea colloquy with him pursuant to Crim.R. 11(C), which pertains to guilty pleas entered in felony cases.  Murray does not raise any challenge to the substance of the colloquy.  After Murray pleaded guilty and the court accepted the pleas, it immediately proceeded to sentencing.  During the sentencing portion of the hearing, the following exchange occurred:

3

THE COURT: * * *. Mr. Murray, is there anything you would like to say about you, your arrest, or anything in the way of mitigation of punishment?

[MURRAY]: I only had one question. On the CR-1019, is that what it is?

THE COURT: Yes.

[MURRAY]: Upon arrest, I never had a parole violation. When they – when they actually came to my residence there was no parole violation when I got arrested. So they said – they came to my house with a parole violation when – upon arrest at that point, I was in handcuffs. They never produced any parole violation warrant at all. I actually had a misdemeanor falsification warrant, that was all that they had when they came to the county jail. I never had a parole violation or anything, was never charged with a parole violation or anything. So they say at the time when they raided my house I had a parole violation when I –

THE COURT: Well, if you did have one, that wouldn't be something we would deal with here. That's something that's dealt with the Parole Board at the state level. And if they haven't filed one, that's a good thing. So that's much less that you could be forced to go back and serve some of that PRC time. So you save yourself, depending on what your PRC was, you save yourself a couple years on that.

[MURRAY]: Okay.

[THE COURT]: Any other questions?

[MURRAY]: No, sir.

{¶9}   Murray bases his first assigned error upon this exchange. The entirety of

Murray's argument in support of his first assigned error follows:

While Appellant recognizes that the provisions contained in Crim. R. 11 were intended to ensure that a criminal defendant is advised of all the constitutional rights he or she is waving by entering a guilty plea, Appellant respectfully submits that where, as here, the record reveals that the criminal defendant did not enter the plea on a knowing and voluntary basis, reversible error has occurred. While perhaps the Trial Court

4

Case Nos. 2022-T-0075 and 2022-T-0076

in the case at bar did not need to address Appellant's claim concerning the warrant in question at all, it is axiomatic that when the Trial Court undertook to do so, the Trial Court was required to accurately analyze the issue and advise Appellant accordingly. While the Trial Court did correctly advise the Appellant at [sic] any parole violation would be handled by the Parole Board, the Trial Court failed to recognize and advise Appellant that if in fact police authorities did not have a valid warrant when the seizure in search of Appellant occurred, that evidence was subject [sic] suppression pursuant to the exclusionary rule.

Clearly, Appellant in the case at bar did not enter his pleas in this package deal on a knowing and voluntary basis. Consequently, Appellant's guilty pleas should be vacated and the matter remanded for further proceedings.

{¶10} Murray fails to support this argument with citation to any authority. *See* App.R. 16(A)(7). We disagree that it is "axiomatic" that the trial court was required to advise Murray regarding potential suppression issues that could have been implicated if the officers had not obtained a valid warrant. Further, this court has held that a trial court is "not required to inform [the accused] of any possible suppression issues during the plea hearing." *State v. Pough*, 11th Dist. Trumbull No. 2000-T-0151, 2002-Ohio-6927, ¶ 45, citing *State v. Taylor*, 2d Dist. Montgomery No. 12570, 1992 WL 103698, *1 (May 18, 1992); and *State v. Drawdy*, 8th Dist. Cuyahoga No. 52154,1988 WL 87584, *1 (Aug. 4, 1988).

{¶11} Additionally, at this point in the proceedings, Murray had already pleaded guilty, and the court had accepted the plea. There was no indication during the plea colloquy that Murray did not knowingly, voluntarily, or intelligently waive his rights by pleading guilty, and, as set forth above, Murray does not argue that the trial court failed to comply with Crim.R. 11(C) prior to accepting his plea. Neither Murray's statements nor

5

the court's response at sentencing retroactively undermined the knowing, voluntary, and intelligent nature of Murray's plea.

{¶12} Accordingly, Murray's first assigned error lacks merit.

{¶13} In his second assigned error, Murray contends:

> The trial court committed reversible error in violation of various constitutional rights by sentencing appellant to indefinite terms of incarceration.

{¶14} The Reagan Tokes Law required Murray's sentence imposed in Case No. 2021 CR 01019 to be set at an indeterminate length. At sentencing, defense counsel stated the following with respect to the Reagan Tokes Law:

> I do – I am of the opinion that the indefinite sentence is kind of in a state of flux with Reagan Tokes. So from our perspective, Judge, I think I need to object to that application in case the Supreme Court does, in fact, review, which I believe is going on. It shouldn't impact our agreed upon sentence as it relates to the minimum sentences of this case.

{¶15} Defense counsel did not advance any more particularized argument with respect to the Reagan Tokes Law or challenge the constitutionality of the Reagan Tokes Law in any specific manner. "While an appellate court may hear a constitutional challenge that has not been raised below, such an issue is evaluated only for plain error." *State v. Shannon*, 11th Dist. Trumbull No. 2021-T-0049, 2022-Ohio-4160, ¶ 42, citing *State v. Freetage*, 11th Dist. Portage No. 2020-P-0083, 2021-Ohio-4050, ¶ 34. "When the court hears an appeal for plain error, it must presume the constitutionality of the statute at issue and will not invalidate it unless the challenger establishes that it is unconstitutional beyond a reasonable doubt." *Shannon* at ¶ 42, quoting *Freetage* at ¶ 34.

{¶16} Nonetheless, as Murray recognizes in his appellate brief, this court has previously considered the constitutionality of the Reagan Tokes Law. *See, e.g., State v.*

6

*Moran*, 2022-Ohio-3610, 198 N.E.3d 922 (11th Dist.) and *State v. Taylor*, 2022-Ohio-3611, 198 N.E.3d 956 (11th Dist.). We have "determined that the Reagan Tokes Law does not violate the doctrine of separation of powers, an appellant's constitutional rights to due process, fair trial, or trial by jury, and, further, that it is not void for vagueness." *State v. Stearns*, 11th Dist. Lake No. 2021-L-091, 2022-Ohio-4245, ¶ 29, *appeal allowed*, 2023-Ohio-554.[1]

{¶17} Accordingly, for the reasons stated by this court in *Moran* and *Taylor*, Murray's second assigned error lacks merit.

{¶18} The judgments are affirmed.

JOHN J. EKLUND, P.J.,

MARY JANE TRAPP, J.,

concur.

---

1. "[T]he constitutionality of the Reagan Tokes Law has been addressed by other Ohio appellate courts, each of which has declared that the sentencing scheme does not facially violate an inmate's constitutional rights." *Moran* at ¶ 4, citing *State v. Barnes*, 2d Dist. Montgomery No. 28613, 2020-Ohio-4150; *State v. Hacker*, 2020-Ohio-5048, 161 N.E.3d 112 (3d Dist.), *appeal allowed in part*, 161 Ohio St.3d 1449, 2021-Ohio-534, 163 N.E.3d 585; *State v. Bontrager*, 2022-Ohio-1367, 188 N.E.3d 607 (4th Dist.); *State v. Ratliff*, 2022-Ohio-1372, 190 N.E.3d 684 (5th Dist.), *appeal allowed*, 167 Ohio St.3d 1481, 2022-Ohio-2765, 192 N.E.3d 516; *State v. Maddox*, 2022-Ohio-1350, 188 N.E.3d 682 (6th Dist.); *State v. Delvallie*, 2022-Ohio-470, 185 N.E.3d 536 (8th Dist.) (en banc), *appeal allowed*, 166 Ohio St.3d 1496, 2022-Ohio-1485, 186 N.E.3d 830; and *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837. *See also State v. Guyton*, 1st Dist. Hamilton No. C-190657, 2022-Ohio-2962, *appeal allowed*, 168 Ohio St.3d 1418, 2022-Ohio-3752, 196 N.E.3d 850, ¶ 1; and *State v. Runner*, 2022-Ohio-4756, ---N.E.3d ---- (7th Dist.). The issue of the facial constitutionality of the Reagan Tokes Law is currently pending before the Supreme Court of Ohio. *See, e.g., State v. Hacker*, Sup. Ct. Case No. 2020-1496; and *State v. Simmons*, Sup. Ct. Case No. 2021-0532.

Case Nos. 2022-T-0075 and 2022-T-0076